# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-10049 |
| ) | |
| RICHARD JIMENEZ, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Jimenez's Motions for Compassionate Release (Docs. 37, 40, 43) and the Government's Response (D. 45). For the reasons set forth below, Defendant's Motions are DENIED.

### BACKGROUND

On October 4, 2011, Defendant pleaded guilty to Counts One and Two of a five-count Indictment charging him with transportation of child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1). (D. 15; Minute Entry dated 10/04/2011). On January 10, 2012, Defendant was sentenced to 240 months of imprisonment. (D. 22 at 2).

Defendant is currently housed at Federal Medical Center in Lexington, Kentucky (FMC Lexington). (D. 43 at 1). His projected release date is June 2, 2028. *Id.* Following his release, he will serve a lifetime term of supervised release. (D. 22 at 3).

On May 25, 2020, Defendant filed a request for compassionate release with the Warden at FMC Lexington. (D. 40 at 14). The Warden denied his request on July 7, 2020. (D. 44-2 at 2).

On July 27, 2020, Defendant filed two Motions for Compassionate Release. (Docs. 37, 40). The Court appointed the Federal Public Defender's Office to represent him. (Text Order dated 7/27/2020). On August 10, 2020, an Amended Motion for Compassionate Release was filed on his behalf. (D. 43). On August 14, 2020, the Government filed its Response in opposition to compassionate release. (D. 45). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

If an inmate has a chronic medical condition identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming severely ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition reasonably may be found to be "serious" and to "substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13, cmt. n.1(A)(ii)(I).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982 at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, a court must deny a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

## DISCUSSION

### A. Exhaustion of BOP Administrative Remedies

Defendant filed a request for compassionate release with the Warden on May 25, 2020; the Warden denied his request on July 7, 2020; and Defendant filed his Motion on July 27, 2020. Therefore, the Court finds that Defendant exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A) before filing his Motion.

### B. Defendant's Medical Conditions

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(1).

3

Defendant, who is 58 years old, seeks compassionate release due to medical conditions that he claims increase his risk for severe illness if he contracts COVID-19. (D. 43 at 4). After experiencing a stroke and heart attack, Defendant had stents inserted to improve blood flow. *Id*. He also suffers from hypertension and takes medication to control high blood pressure. *Id*. Defendant states he is 6'1", weighs approximately 245 pounds, and has a BMI of 32. *Id*.

The Government asserts that Defendant has not demonstrated a medical condition that establishes an extraordinary and compelling reason for a reduced sentence. (D. 45 at 10) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). Defendant claims he has a BMI of 32 (obese), but the Government notes that Defendant used his weight of 245 pounds from 2011 to calculate his BMI. *Id*. at 13. More recent medical records show that he lost a significant amount of weight and reduced his BMI to 30. (D. 44). As a result, the Government states that "his current posited medical condition of obesity is inaccurate and unfounded." (D. 45 at 13). Regarding Defendant's hypertension, the Government argues that (1) the CDC has stated hypertension *may* increase the risk of becoming severely ill from COVID-19 and (2) Defendant's medical records show that he is not complying with his medical treatment for hypertension. *Id*.

The Court finds that Defendant's medical and physical conditions do not constitute an "extraordinary and compelling reason" for release.

### C. FMC Lexington

At the time his Motion was filed, eight inmates at FMC Lexington had died from COVID-19; one staff member tested positive; and 225 inmates and 11 staff members had recovered. *Id*. at 5. Defendant argues that FMC Lexington, despite being a medical facility, has not done enough to prevent inmates and staff from contracting COVID-19. *Id*.

The Court is aware of the BOP's response to the pandemic and the measures it has taken to protect the health of inmates and staff. There have been no new deaths at FMC Lexington since Defendant filed his Amended Motion. Currently, there are five inmates and no staff members who are infected. *See* BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last accessed September 21, 2020). If the presence of COVID-19 in a particular prison could justify compassionate release, then every inmate could obtain release. *See, e.g., United States v. Melgarejo*, 2020 WL 2395982 at *5 (C.D. Ill. May 12, 2020). The Court must also consider other factors to determine if Defendant's immediate release is warranted.

### D. Applicable 18 U.S.C. § 3553(a) Sentencing Factors and Policy Statements

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

Defendant argues that he will not be a danger to the community if released because he had no prior criminal history; he had only two minor violations in prison in eight years; and he plans to live a "law-abiding life" when released. (D. 43 at 7-8). Defendant argues he has a weakened physical condition, which lowers his risk of hurting anyone. *Id.* at 8. Additionally, he was ordered to serve a lifetime term of supervised release and will have to register as a sex offender. *Id.*

The Government also argues that Defendant's request for compassionate release should be denied because his history and characteristics establish that his release would present a danger to the community and would be unwarranted under the § 3553(a) factors. (D. 45 at 14). Defendant had in his possession at least 1,855 child pornography images and 1,000 child pornography video

files, of which 45 videos depicted sadistic and masochistic conduct. *Id*. (citing PSR at ¶ 19). In addition to Defendant's online victims, he molested two boys who were five and six years old by grabbing their penises, and he had sexual contact with a 14-year-old boy over the course of three weeks. *Id*. at 3 (citing PSR at ¶ 16). The Government argues that he presents a continued danger to the community because he has demonstrated a lack of awareness of the real harm to his victims and there is no evidence that he engaged in sex offender counseling while incarcerated. *Id*. at 15 (citing D. 42 at 1).

The Court agrees with the Government that the § 3553(a) factors strongly disfavor reducing Defendant's sentence. As set forth in Defendant's presentence investigation report, he began building his collection of child pornography in the 1980s. (PSR at ¶ 8). He led a network of criminals in a platform known as Gigatribe, which, at that time, was "often used by the most prolific and sophisticated child pornography traders." *Id*. Defendant had rules for his tribe. *Id*. To be a part of the tribe, members had to share content of children being raped, and if a member failed to do so, Defendant eliminated them from the tribe. *Id*. Defendant was apprehended when law enforcement, posing as a Gigatribe member, gained access to Defendant's network and selected and downloaded 395 child pornography images from Defendant. *Id*. at ¶ 10. The images included prepubescent children being raped by adult males. *Id*. Defendant's obsession with child pornography unfortunately did not end with his collection of files; he admitted to molesting at least three boys, who were approximately five, six, and fourteen. *Id*. at ¶ 16. Therefore, the Court finds that he is a danger to the community and his Motion for Compassionate Release must be DENIED.

E. **Defendant's Release Plan**

Even if he was sentenced to time served, Defendant's release plan is extremely problematic. His plan includes living with his friend, Mr. Medel, at his residence located within

400 feet of an elementary school in Milwaukee, Wisconsin, but living there would violate the Wisconsin Sex Offender Registration Act address requirements. (D. 42 at 1-2). Mr. Medel is disabled and has limited use of his legs. *Id*. at 1. Most troubling is the fact that Defendant molested Mr. Medel's nephew, and when Mr. Medel found out about it, he "scolded him" rather than notifying law enforcement. (D. 42 at 2).

Without a suitable residence, Defendant will be homeless because he has no other close friends or family. (D. 43 at 8). Defendant suggests that he could reside in a community confinement center as a condition of his supervised release until he found his own residence, but this is a moot issue because he would still pose a danger to the community due to his history and characteristics.

## CONCLUSION

For the reasons set forth above, Defendant's Motions for Compassionate Release [37], [40], [43] are DENIED.

Entered this 21st day of September, 2020.

                                                 s/ Michael M. Mihm
                                                 Michael M. Mihm
                                                 United States District Judge